**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

**SANTERIA ROWSER,**

**PLAINTIFF,**

    **V.**                          **CASE NO.:**

**GAT AIRLINE GROUND**

**SUPPORT, INC.,**                 **PLAINTIFF DEMANDS TRIAL**

**DEFENDANT(S).**               **BY STRUCK JURY**

**COMPLAINT**

## JURISDICTION

1.     This suit is authorized and instituted under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, the "Civil Rights Act of 1991;" 42 U.S.C. § 2000e, et seq. (Title VII).

2.     This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

3.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).  Plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## PARTIES

4.     Plaintiff, Santeria Rowser, ("Plaintiff" or "Rowser") is a resident of Mobile,  Mobile County, and performed work for the Defendant in the counties

1

composing the Southern District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Mobile Division.

5. Defendant GAT Airline Ground Support, Inc. ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

6. Defendant employed at least fifteen (15) people during the current or preceding calendar year.

7. Defendant's gross annual revenue exceeds $500,000.

## FACTS

8. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

9. Rowser began her employment with defendant on or about August 16, 2024 as Airport Customer Service Agent.

10. Throughout her employment, Rowser experienced consistent mistreatment by her supervisor, John Collins, a Caucasian man.

11. Upon starting her position, she was assigned to work under Maria Collins, with John Collins serving as a supervisor.

12. When Rowser began her position, she was trained alongside three other new hires, Jaylen (LNU), Brittany Collins and Antonio Duckworth.

2

13. Just after the training period, Rowser learned that John Collins had terminated a black female coworker, Jaylen (LNU), following an altercation.

14. Rowser also learned that John Collins had terminated another black male coworker, Antonio Duckworth, following another dispute.

15. Both coworkers were terminated within a month of being hired, on or around September 2024.

16. After completing training, Rowser was assigned to work under Brittany Collins, who had recently been promoted to shift lead.

17. Rowser developed a professional rapport with Brittany, who later disclosed that John Collins had referred to Rowser as "unteachable" and made disparaging remarks about her.

18. Despite these comments, Rowser maintained her professionalism and continued to perform her duties.

19. Maria Collins eventually stepped down from her role, in or around September of 2024.

20. A new supervisor, referred to as "Lady J," was hired in or around October of 2024.

21. Subsequently, John Collins was demoted to a trainer position.

22. Around four months after being hired, while working alongside John Collins, Rowser commented on another employee not working, making her do all

the work. John Collins responded angrily, repeatedly stating, "You know I'm your MF boss."

23.    Rowser immediately reported the incident to Lady J, who convened a meeting with both parties.

24.    During the meeting, Rowser expressed her concerns about the disrespectful behavior and emphasized her expectation for professional treatment.

25.    Lady J agreed and instructed John Collins to apologize. However, John Collins refused, threatened to resign, and the matter was escalated to HR.

26.    Despite this escalation, Rowser was not asked to provide a written statement.

27.    For several months, Rowser continued her employment without major incidents.

28.    On or around July 3, 2025, John Collins approached Rowser and informed her of a last-minute change to her work schedule, providing less than 24 hours' notice.

29.    Rowser explained that she had already made plans based on the original schedule and could not accommodate the change.

30.    John Collins involved Mary Beth, the station manager, and Mary Beth spoke with them.

31.    During this interaction, John Collins made a threatening remark, stating, "Do you really want to do this with me? You know what happened last time."

32.    On July 4, 2025, Rowser worked the adjusted schedule, anticipating time-and-a-half pay due to the holiday.

33.    As Rowser left for the day, John Collins made a derogatory comment, saying, "Enjoy your time on the unemployment line."

34.    Throughout her employment, Rowser observed discriminatory behavior by John Collins toward Black employees and customers.

35.    Collins targeted black employees and customers, speaking rudely to them.

36.    For example, Collins would change a black customer's seat but would not do the same to white customers.

37.    Collins regularly upgraded white customers' seats but would not do the same for black customers.

38.    For instance, Brittany Collins reported experiencing similar treatment as Rowser.

39.    Another Black employee, Justin Bailey, was terminated after management failed to properly schedule him.

40.    Around July 3, 2025, Rowser reported Collins to HR for race discrimination.

41.    Rowser was terminated on July 23, 2025.

42.    Defendant cited "attendance violations," but this was pretext.

43.    Other employees outside of her protected class who also had attendance points were not disciplined or terminated.

## COUNT I: TITLE VII - RACE DISCHARGE

44.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

45.    Plaintiff is a person of African ancestry colloquially known as black or African American.

46.    Plaintiff was qualified for the position of Airport Customer Service Agent.

47.    Defendant terminated Plaintiff's employment on or about July 23, 2025.

48.    Felicia LNU engaged in the same or similar conduct but remained employed.

49.    Felicia LNU is a person of Caucasian ancestry.

50.    Defendant's actions in terminating Plaintiff's employment violated Title VII.

51.    Because of Defendant's violation of Title VII, Plaintiff has been damaged, suffering loss of pay and benefits.

52.    Defendant did not terminate Felicia LNU for the same or similar conduct.

53.    Defendant's Race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

54.    Because of Defendant's discriminatory decision made in whole or in part because of her race, Plaintiff has lost pay and continues to be paid less.

## COUNT II: 42 U. S. C. § 1981 DISCHARGE

55.    Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

56.    Plaintiff is a person of African ancestry colloquially known as black or African American.

57.    Plaintiff was qualified for the position of Airport Customer Service Agent.

58.    On or about July 23, 2025, Defendant terminated Plaintiff's employment.

59.    Other people who committed the same alleged infraction who were outside her protected class were not terminated.

60.    Because of Defendant's discriminatory decision made in whole or in part because of her race, Plaintiff has lost pay and continues to be paid less.

61.     Because of Defendant's violation of 42 U. S. C § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT III: TITLE VII RETALIATION

62.     Plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

63.     Plaintiff was qualified for the position and able to perform the essential functions of the job.

64.     On or about July 3, 2025, Plaintiff engaged in protected activity, when she reported discrimination based on race.

65.     On or about July 23, 2025, Defendant terminated Plaintiff's employment.

66.     But for Plaintiff's protected activity, Defendant would have retained Plaintiff in the position as a Customer Service Agent.

67.     Defendant violated Title VII by terminating Plaintiff for engaging in protected activity.

68.     Because of Defendant's violation of Title VII, Plaintiff has been damaged suffering loss of pay, benefits, and mental anguish.

## COUNT IV: 42 U. S. C. § 1981 RETALIATION

69.     Plaintiff incorporates by reference and re-alleges each of the preceding paragraphs as if set out herein.

70.     Plaintiff was qualified for the Customer Service Agent position and able to perform the essential functions of the job.

71.     On or about July 3, 2025, Plaintiff engaged in protected activity when she reported discrimination based on race.

72.     On or about July 23, 2025, Defendant terminated Plaintiff's employment.

73.     But for Plaintiff's protected activity she would have been retained in her position as a Customer Service Agent.

74.     Defendant violated the 42 U. S. C. § 1981 by terminating Plaintiff in whole or in part for engaging in protected activity.

75.     Because of Defendant's violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

B.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

C.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had she not been terminated;

D.    Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

E.    Attorneys' fees and costs;

F.    Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

G.    Any different or additional relief as determined by the Court to which Plaintiff is entitled.

**JURY TRIAL DEMANDED**

/s/ *Kira Fonteneau*
Kira Fonteneau

**OF COUNSEL:**

THE WORKERS FIRM LLC
2 North 20th St, Suite 900
Birmingham, AL 35203

(404) 382-9660
kira@theworkersfirm.com


PLEASE SERVE DEFENDANT AS FOLLOWS

Gat Airline Ground Support, Inc.
c/o Cogency Global, Inc.
2 N JACKSON STREET, SUITE 605
MONTGOMERY, AL 36104